Good morning. Good morning, and may it please the Court, Ava Beatty on behalf of Petitioner Dennis Fajardo, appearing under the supervision of the clinical programs at UC Irvine School of Law. My co-counsel Yeshina Burns will be addressing the rebuttal. May we reserve three minutes for rebuttal? Please, yes, watch the time. We have great admiration for your excellent dean, and we thank your professor here for bringing you up. Just give her a clean start on the time here. We're just talking here for a minute, so please proceed. This Court should reverse the BIA's decision for two reasons. First, the BIA erred with respect to Nexus and Dennis' sexual orientation claim, and second, the BIA erred with respect to Dennis' cat claim. First, this Court should reverse because there is a nexus between the and his status as a gay man in Honduras. Dennis is a feminist. He has credibly testified that he walks and talks in such a way as to show that he is gay to others. He also openly admires other men. As a result, his community members know that he is gay. Consequently, the Honduran gang, perceiving Dennis' gayness as weakness, beat Dennis over 50 times while subjecting him to homophobic slurs, such as, we will make you a man. And this statement, we will make you a man, is based off an unfortunate Central American belief that beating a gay man will turn him straight. Now we're here on a substantial evidence standard of review, and the immigration judge on the first claim felt that there was a revenge motive for the sexual assault, and on the motivation than an anti-gay, animus motivation. Given our standard of review, what do we do about that? Well, first, Your Honor, we're arguing that this Court should review our case under the de novo standard of review, because there are issues of law as to Dennis' on account of claim and his cat claim. But even under the substantial evidence standard of review, the record compels the conclusion that, per the mixed motive standard, even though economic reason could have been one reason for the harm Dennis suffered by the gangs, his sexual orientation was also a motive of the gangs when beating Dennis. So you're basically relying upon Vitug and Ali, is that correct? Yes, Your Honor. Okay, and with mixed motive, I guess we then look at what was said. In this particular case, the I.J. said he found the witness credible, right? Yes, Your Honor. And yet later he seemed to contradict himself. Let me see if I can get a citation to the record. One second here. Anyway, I will find it. But he seemed to contradict himself, and I guess my question is, how are we supposed to construe this? Here it is. AR-209, while he said he was credible, he said, well, let me be blunt and say why I should be – in other words, tell me why I should believe you. So we've got an I.J. saying one thing at one time and another thing at another time. Under our case law, what do we do with that? I'm not sure. The overall determination was that Dennis was credible, and this was a finding that was undisturbed by the BIA as well. And so I think that we should pay great deference to that finding. I think the I.J.'s point in going through that analysis was he was openly contemplating whether or not he should find Dennis credible, which nevertheless did at the end. And per our case law, per VITOG, for example, in that case, the persecutor made clear references to the victim's sexual orientation during an extortion activity while he was beating him. And the court found that the beatings coupled with the statements were sufficient to show that he was beaten on account of a protected status. And that's exactly what we're asking the court to find here as well. And therefore, there is substantial evidence that Dennis was beaten on account of his sexual orientation by the gangs. Now, does that go primarily to the withholding of removal, or does it go also to the cat – the cat claim? Well, as to the cat claim, we're – it is more likely than not that Dennis will be tortured by Julio and his gang if he returns to Honduras. And the – That's a different deal, isn't it? He's not a government official. How do we get into that? Well, there's – the record compels a conclusion that the government will likely acquiesce in the torture of Dennis or – or turn a blind eye to the torture of Dennis. And that is because Julio has corrupt relationships with Honduran law enforcement. That is – there's clear evidence of that in the record. Julio engages in unlawful drug transactions in which Honduran law enforcement are often complicit. He pays them off. He – Dennis himself has bore witness to at least five occasions where all throughout Honduras, even up until – up until the border, where Julio has engaged in these transactions. Doesn't our Mesa case say, though, that – that there's not a – that Honduras does have a sufficient track record now that they protect gays and so that there's not a presumption that your client would be unsafe returning to the country? I'm sorry, Your Honor. I'm not familiar with Mesa. But the country reports that we have indicate another story. Because in the country reports, it's clear that police are often complicit in crimes against the LGBT community and that often crimes against the LGBT community remain uninvestigated and unprosecuted. And this court in Bromfield suggested – or this court in Bromfield found that the country reports are highly dispositive of a finding of – are highly important when evaluating claims of future persecution, and I also think that applies to future torture. But as to the claims specific to Julio, Julio has already murdered Dennis's cousin Maria. He has told Dennis's family members that he will kill Dennis once he finds him and that he will kill each family member one by one until he finds Dennis. So he's actively searching for Dennis. And this is only compounded by the fact – Doesn't the record show you why he's – why he's so busy searching for Dennis? Yes, Your – Doesn't this record show specifically why? It's not because Dennis is a homosexual. It's because Dennis gave him HIV. Isn't that what this record affirmatively shows? Yes, Your Honor, but under the CAT analysis, there does not need to be a protected ground at issue. You only have to show – I'm wondering, though, if we must stretch to show that any homosexual would be persecuted or have the problems that your client had, as opposed to this record, which specifically shows that it was certain of his conduct that caused him to specifically be targeted. Doesn't – Can't that – Isn't that a reasonable reading of this record? Well, and that may go towards Dennis's HIV claim, but as to CAT, this falls well within the cases that we've read for the CAT claim. Here, there does not need to be a protected status to find relief under CAT. There's clear evidence that Dennis will be murdered by Julio and, if not tortured by Julio, with the acquiescence of government officials if he returns to Honduras. Okay, let me – let me ask you this. Julio himself is homosexual. Otherwise, he wouldn't have contracted the AIDS with your petitioner. He's angry he contracted AIDS. He wants revenge. You're saying that there's a showing that the government would acquiesce in any such torture or murder or whatever it may be. What evidence do you cite for that? And in these kinds of circumstances where you have two homosexual men, one infects the other with HIV, you're claiming the government would acquiesce in the one's, if you will, angry response to being infected with HIV and that that would be a nexus to government conduct? Yes. So for the CAT claim, it's – there's evidence that with regards to Julio's cousin's murder, Maria's murder, and the two incidents where Julio and his gang confronted Dennis's and Dennis's sister's declaration speaks to the fact that any report that the family will file with the police will remain largely ignored by Honduran law enforcement. And this is only compounded by the corrupt relationship that Julio already has with Honduran law enforcement, which will more likely than not cause them to acquiesce in any future torture and any future persecution of Dennis. Is this – is this law enforcement in his town, San Pedro, or is it – is your argument that there's no town or city within Honduras where he would be safe? The record compels the conclusion that there is no town in the – in all of Honduras that record – that Dennis would be safe. And that statement would be based on the country report or what testimony would you point us to? Dennis credibly testifies that the police will recognize him because he traveled with Julio everywhere and that Julio's business was all over Honduras and that he would travel with Julio all throughout Honduras up until the borders. And on that note, if the court has no further questions, we'd like to let him go. Thank you. Here from the government. Good morning and may it please the court. My name is Greg Mack, counsel for the respondent, the Attorney General of the United States. This case involves the reinstatement of a 2011 order of removal to Honduras and petitioner had to demonstrate before the immigration judge and the Board of Immigration Appeals that there was a clear probability of persecution or torture if he returned to Honduras. We would submit to the court that the record evidence does not compel the conclusion that he has demonstrated. Well, counsel, we have a different situation here, do we not? If I understand the record correctly – correct me if I'm wrong – the I.J. said he believed the petitioner. The petitioner alleged a mixed motive attack, if you will, and under our Bitu case and the Ali case, that is sufficient to establish a protected ground claim. That puts the burden on the government to come back and show – by some very strong evidence – that that is wrong. I don't see any evidence in this case from the government refuting that presumption. Where is it in the record? It's in the record with respect to petitioner talking about why the gangs were after him and why the gangs focused on him. On page 207 of the record, he's testified the gangs focused on him because his family has a supermarket and he will not defend himself. Further, when the immigration judge asked him why the gangs were after him, he said they were weak. And the immigration judge asked him, what do you mean by weak? And the petitioner doesn't refer to his sexual orientation. He says, it's because I won't fight back. Well, actually, he did refer to his sexual orientation. As the counsel mentioned, they said they were going to beat him straight. It was real clear from the record that I read that in part, yes, they wanted money. That was clear. But they also attacked him because he was gay. And under Vitug and Ali, it's clear that if any of the things that were done were based upon a protected ground, that that is sufficient to meet the requirement as far as the initial showing by the petitioner. Well, Your Honor, the board doesn't use the term mixed motive, and I think – No, it's our case law that uses the term mixed motive. I understand that. And as well, the board cites the court's decision in Parisimova with respect to the Real ID Act. So I think we have to move away from the language of mixed motive to the central reason test in the Real ID Act and the court's decision in Parisimova. What evidence or what case law can you cite that overrules our two cases, Vitug and Ali? I don't say that those cases have been overruled. I point to Parisimova and the law that says that we point to the central reason. But I would submit to the court that there is a mixture here of the taunts and the slurs and the economic reason. And I would submit to the court that those taunts and slurs were a means to win. They were after his money or his wallet, not after – Well, that's one of the – that's what the whole mixed motive is about. And indeed, in the Vitug case, it was almost identical facts as a Philippine man. They wanted money, but they also were impugning his sexuality. And the court found that that was enough to establish mixed motive. Ali said the same thing. I'd appreciate anything you can show me that shows that that case law has been overruled. But if it hasn't been overruled, then isn't it a fact that the petitioner has established under our case law that he was tortured, he was – in the past. He was beat 50 times, if I recall correctly. He was beaten up 50 times is what he said. The IJ credited that. The presumption then is that he will be tortured in the future or beaten up or whatever you want to call it. What evidence did the government produce to refute that? Well, I don't know which we're talking about, torture or we're talking about persecution. Okay, let's say persecution. That's probably a better term, sir. We'll take it away from the cat claim. Let's just say persecution. With respect to persecution, I would point to the court, the immigration judges, focus at page 214 of the record. It's not his decision, but it's his discussion of the case. And I think what we have here is we have the central reason test. We do, in fact, have Baitug and Ali, but this case is essentially about the substantial evidence test and where the record compels the conclusion that his sexual orientation was the motive behind the gangs. Again, counsel, with respect, you're not paying attention to our case law. We're Ninth Circuit judges. We have to follow our case law. Our case law says mixed motive is enough. So central motive, that's all fine. But once it's been established, as it appears to have been here, then the burden shifts to the government to show why the presumption doesn't follow through. And I'm asking you, what specific evidence did the government produce to show that the presumption is overcome? Well, I would point back to page 207 of the record where the petitioner says, well, the immigration judges asked him, why are the gangs focused on you? And he says, because his family has a supermarket and because he's a person who wouldn't fight back. He says, he's weak. I wouldn't fight back. And the immigration judge in page 214, I think this gets to the heart of the substantial evidence test, he talks about it being a close question with respect to these cases and how do we ferret out what is the motive here? What is the overriding motive? What's the central motive? What concern is, what's motive that is going on is driving these individuals? Counsel, with respect, I don't think you're familiar with our two cases because you're just talking circles. It's not necessary that there be an overriding motive if there is a mixed motive. In other words, partially, let's just give it out there. There's no question that in part they were looking for money, granted. But they also attacked this young man based upon his sexuality. Under our case law, that's all they got to do. Then the presumption is that there will be future persecution and the government has to refute that unless there's something else I'm not familiar with under the law. I don't know what it is, but I want to know how the government refuted the presumption that was established under Vitug and Ali. Well, the immigration judge talks about what was the reason behind the gang's interest in this individual. At page 214, the immigration judge says, and the court asks, what was the evidence that was presented below? At 214, the immigration judge says, the issue whether the gangs have persecuted you is difficult to ferret out. The immigration judge adds, the criminals are after money, and that petitioner's right that they look for people who do not resist. And the immigration judge goes on to say that it doesn't appear that they seek you out because you are homosexual. Your homosexuality is not central to what happened here. Now, neither, from what I look at, the board's decision or the immigration judge's decisions didn't get into the question of whether the presumption was overcome, but they clearly looked at what was animating the gangs. And petitioner testified the gangs were after him because of the supermarket. They also, there's no doubt in the record, and we pointed out in our brief, that the gangs also used homophobic slurs, but those slurs and taunts were means to an end, the economic end, the money. Well, we have, like the old movie, what we have here is a failure to communicate. You and I aren't communicating because you're just talking circles as far as I'm concerned. You're not responding to the cases. You're not responding to the evidence. You're saying to me, basically, if your evidence is that the IJs said what you just quoted on 214, is that the end of it? That's all the evidence there is? That's the evidence that the immigration judge pointed to, as well as the IJs. I hear the court loud and clear with respect to the reference to the two cases and the mixed motive, and I think what we've said in our brief and what I'm saying here is what drove the immigration judge to look at this case, and he said it was a difficult case to fair it out. So the immigration judge is aware that there's mixed motives going on. The immigration judge also says it's risking on the Honduras to be a homosexual, but at the end of the day, and given the court's standard of review, the immigration judge looked at the evidence and what's animating the individuals and what's driving the gangs was an economic reason. But you're suggesting by that that you can look at mixed motive and say, okay, we're going to take all these motives and we're going to distill it into one, and if the one is economic, then that's cool. In this particular case, I'm saying that Bitug and Ali don't say that. They say if there's mixed motive and one of the motives is based on violence against someone that's part of a protected class, the presumption gets established, and I don't think you're responding to that. Well, the court asked me where's the evidence, and I don't dispute what the court with the decisions of Bitug and Ali said. The court asked what is the evidence, and I pointed the court back to what the immigration judge said with respect to the gangs motive with respect to these individuals. Now, under Bitug and Ali, if that doesn't meet the presumption as the court has laid out with respect to Bitug and Ali, that's a different question. The court asked what was the evidence, and I pointed the court to that evidence that the immigration judge focused on as what was animating the gangs here. Now, there's no doubt there were homophobic slurs and taunts that were used here, but they were a means to an end. Isn't that enough under Bitug? I don't think so, not on this record. How do you distinguish it? I distinguish it by pointing to what the immigration judge said with respect to what animated the gangs, and with respect to the presumption that it was driven by homosexuality, the immigration judge clearly focuses on the economic motive that was at play here. So, the immigration judge was aware that those taunts and slurs were in place, that he had been beaten 50 times, but at the end of the day, the immigration judge noted that the economic reason drove the case here. The court asked what is the evidence, and that's the evidence that I point to, the immigration judge's decision, and the immigration judge's review of the evidence at page 214 as well as the Board of Immigration Appeals decision. I see my time is about down to eight seconds, so if there's any other questions. Any questions? No? Thank you, counsel. You have a little rebuttal time, do you want to use it? Oh, that's right, we've got two of you. We'll give her two minutes, okay? Good morning, your honors. My name is Yeshina Burns, and I'm an admitted student under the clinical program at UCI School of Law, and I'm representing petitioner Dennis Fajardo. So, first, as to the government's claim that this is mere extortion, economic harm, this is completely inaccurate based on the record. The motive from the first day was based on Dennis's sexual orientation. They explicitly stated every single time he passed, from day one, they referenced his sexual orientation. Counsel, under our case law, I don't think there's any question, is there, that they also wanted money, right? Yes, yes. So they want money, they also make sexual orientation slurs. Under our case law, is that sufficient to establish a violation of his protected status, if you will? Yes, it is, your honor, because it's a mixed motive standard, and the central reason need not be the only reason or the most important reason for the persecution. And in this case, it is a pretty vital reason, considering the fact that the Honduran gang explicitly referred to his sexual orientation every single time. There's nothing in our case law, is there, that requires an immigration judge to say, well, here are these mixed motives, I'm going to weigh them and decide what was the predominant motive and pick one. In this case, economic gain, it was extortion. All you have to establish, isn't it, is you have a protected class, if that occurs, that's enough under our case law. Yes, your honor, this is not a percentage analysis. This is a at least central reason analysis, and under the mixed motive standard, the motive of his sexual orientation is sufficient to meet that standard. This is more than an aside, based on the slurs and also the fact that they over 50 times. What do you have to show in order for us to reverse, so far as you're concerned, considering the case law, the established case law? What do you have to show? I'm sorry, your honor, could you repeat that? What do you have to show in order for us to reverse? You're asking us to reverse, I think. Yes, your honor. What showing do you have to make? What's the standard? To compel the conclusion that there was the Honduran gang attack, Dennis, on the, on account of his sexual orientation. Don't we have to see that it's more, go ahead, you state it as you want to state it. It needs to compel the conclusion. More likely than not is just for the future persecution standard, your honor, and as to nexus, it's not a more likely than not standard. It is, it just needs to compel the conclusion. It needs to be at least one central reason that he was persecuted on account of his sexual orientation. If I may say just one word as to Kat, I just wanted to point out that the issue of the torture is not the, is not the status of the country in Honduras. It's the status of Julio's connection with the police and the fact that he's collaborating with the police and percol at page 770. There's no need for nexus on the basis of his sexual orientation with respect to torture. The horrible motive of revenge is sufficient to meet that standard. And if your honors have no further questions, we'd like to thank you. Thank you both. The case just argued is submitted. We want to thank UCI and professor and who finds law lawyers to be. I'm sure you're both going to do a great job. We're delighted to have you here. I'm sure the government agrees. They've done a fine job. So thank you all and come back anytime.
judges: Tymkovich, Farris, M. Smith